UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON V.,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. C21-5527-SKV<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record ("AR"), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1971, graduated from high school and has military training as a construction equipment operator, and previously worked as a correctional officer in a prison. AR 420. Plaintiff was last gainfully employed in July 2017. AR 419.

In August 2017, Plaintiff applied for benefits, alleging disability as of July 27, 2017. AR 359-81. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

requested a hearing. AR 224-26, 237-45. After the ALJ conducted a hearing in March 2019 (AR 109-56), the ALJ issued a decision finding Plaintiff not disabled. AR 187-203.

The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings. AR 210-12. The ALJ held another hearing in November 2020 (AR 78-108) and subsequently issued a decision finding Plaintiff not disabled. AR 49-69.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two**: Plaintiff has the following severe impairments: bilateral knee osteoarthritis, status post surgeries; hip osteoarthritis; obesity; post-traumatic stress disorder ("PTSD"); anxiety; and depression.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC")**: Plaintiff can perform light work with additional limitations: he can lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for two hours, for 15 minutes at a time, throughout an eight-hour workday. He can sit for six hours per workday, but after one hour of sitting, he must have the opportunity to stand for approximately five minutes. He can sustain a full eight-hour workday, but must have the opportunity to take a usual and customary 15- or 30-minute break after approximately two hours of work. He can never climb ladders, ropes, or scaffolds, and never kneel or crawl. He can occasionally stoop, twist, crouch, balance, and climb ramps and stairs. He should never be required to do a full squat. He can seldom, or rarely, use foot controls. He can frequently handle and finger. He is limited to unskilled work that requires no more than occasional, simple changes to work tasks. He can have no more than occasional, superficial, or intermittent public contact, such that public contact is not part of the job duties. He can tolerate occasional contact with co-workers that does not require teamwork, and can have occasional contact with supervisors.

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

AR 49-69.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

**DISCUSSION**

Plaintiff argues that the ALJ erred in discounting his testimony and in discounting two medical opinions. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

A.   **The ALJ Did Not Err in Discounting Plaintiff's Testimony**

The ALJ summarized Plaintiff's allegations and explained that she discounted them because: (1) Plaintiff's allegations of disabling limitations were inconsistent with the medical record, (2) Plaintiff's allegations of very limited activities is inconsistent with the record, (3) the evidence shows that Plaintiff lacked the motivation to work, (4) Plaintiff's functioning improved with treatment, and (5) Plaintiff declined treatment for some of his allegedly disabling impairments.  AR 56-61.  Plaintiff argues that the ALJ's reasons are not clear and convincing, as required in the Ninth Circuit.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ erroneously focused on the objective evidence and inconsistencies in the record, and that the activities the ALJ cited did not contradict his allegations.  Dkt. 16 at 15-16.  This argument is inadequate to show error in the ALJ's assessment of Plaintiff's testimony because an ALJ properly considers whether a claimant's testimony is consistent with the medical evidence and the remainder of the record.  *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").  Although Plaintiff contends that he could have performed his activities in a manner consistent with his limitations, he does not refer to any specific activities or show how the ALJ's interpretation of his activities was unreasonable.  Dkt. 16 at 16.

Plaintiff also reiterates his arguments regarding the disputed medical opinion evidence, contending that the ALJ should have credited those opinions, but this line of argument does not pertain to the ALJ's reasons for discounting Plaintiff's testimony. Dkt. 16 at 15-16. Because Plaintiff has not argued with any specificity that the ALJ's reasons for discounting his allegations are erroneous, he has not met his burden to show harmful legal error in the ALJ's assessment of his testimony.

**B.     The ALJ Did Not Err in Discounting Medical Opinion Evidence**

Plaintiff contends that the ALJ erred in discounting a medical opinion written by examining psychiatrist James Hopfenbeck, M.D., and in failing to discuss a letter written by examining psychologist Monty Meier, Ph.D.  The Court will address each disputed opinion in turn.

*1.     Legal Standards*

In assessing Plaintiff's 2017 application for benefits, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported by and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c).

The Commissioner argues that the regulations promulgated in 2017 changed the legal standards previously articulated by the Ninth Circuit. *See* Dkt. 20 at 19-20.  Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standards for the review of medical opinions.  It is not, in any event, clear that the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations would differ in

any significant respect.  The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must remain legitimate.  *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020).  The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

### 2. Dr. Hopfenbeck

Dr. Hopfenbeck examined Plaintiff in November 2019 and wrote a narrative report as well as form opinions describing Plaintiff's symptoms and limitations.  AR 1527-53.  In relevant part, Dr. Hopfenbeck concluded his report as follows:

> If [Plaintiff] attempted to return to work, he would surely experience strong exacerbations of trauma and stress symptoms, including explosive anger and frequent panic attacks, and he would not be able to work a full day or maintain anything close to full time competitive employment.  His level of distraction and poor concentration would preclude retraining to some other form of work.  His social life is at a minimum, and this overall state of affairs is permanent.  Treatment will be necessary, but goals will have to be modest, to maintain current levels of functioning and prevent exacerbations, rather than having any reasonable expectation of improvement.

AR 1534.  The ALJ summarized Dr. Hopfenbeck's opinions and explained that she found his conclusions unpersuasive because they were unsupported by the mental status examination and reference factors irrelevant to his RFC (such as Plaintiff's limited social life and inability to serve in the military).  AR 66.  The ALJ also found Dr. Hopfenbeck's conclusions to be inconsistent with other evidence in the record suggesting that Plaintiff's unemployment is due to lack of motivation to work, rather than disability due to impairments.  *Id*.  Because Dr.

Hopfenbeck relied on Plaintiff's unreliable self-report, as well as medical opinions that were also discounted, the ALJ found that Dr. Hopfenbeck's conclusions were inadequately supported. *Id*.

The ALJ's strongest reasons for discounting Dr. Hopfenbeck's opinion pertain to the evidence of Plaintiff's lack of motivation to work, which the ALJ reasonably found to undermine Plaintiff's self-reporting to Dr. Hopfenbeck and to be inconsistent with Dr. Hopfenbeck's suggestion that Plaintiff was unable to work due to his impairments. AR 66. The ALJ referenced treatment notes indicating that Plaintiff had a secondary gain interest and lacked motivation to work, which constitutes substantial evidence to support the ALJ's reasoning. *See, e.g.*, AR 737 (provider reports that she "recommended a company that specializes in helping Veterans to find new careers who have PTSD and cannot work in stressful environments like this [patient] works in and he did not want to take any of the information; it seems there may be some secondary gain"), 794 (Plaintiff complained to provider that her notes were inaccurate and undermining his pursuit of disability and provider responded "that I directly quote what he says to me and my charting is accurate of what was said; and I do not believe that his PTSD alone makes him 'unemployable'"), 799 (Plaintiff reports that he was physically injured at work but does not want to return to that job or get retrained for another job; "wants to be on disability for the rest of his life and not work again"), 800 (provider describes Plaintiff with "poor motivation and does not want to go back to work; reports he does not have any interest in pursuing another career at this time and would be happy to be home on disability for the rest of his life").

Although Plaintiff emphasizes that Dr. Hopfenbeck did not document any evidence of a secondary gain motivation (Dkt. 16 at 14), Plaintiff has not disputed that other evidence in the record documents this or that the ALJ erred in discounting his self-reporting in light of that evidence. Because the ALJ properly discounted Plaintiff's self-reporting in part because he

demonstrated a secondary gain motivation, and Dr. Hopfenbeck relied on Plaintiff's self-reporting in reaching his conclusions, Plaintiff has not shown that the ALJ erred in discounting Dr. Hopfenbeck's opinion based on the secondary gain evidence. *See Kilbourne v. Saul*, 773 F. App'x 401, 402 (9th Cir. Jul. 11, 2019) (affirming an ALJ's discounting of a medical opinion due in part to evidence of Plaintiff's secondary gain motivation, which undermined Plaintiff's self-reporting to the provider).

Because the ALJ reasonably found that Dr. Hopfenbeck's opinions were inconsistent with the evidence of Plaintiff's secondary gain motivation and lacked support from other evidence that the ALJ reasonably found reliable, Plaintiff has not shown that the ALJ erred in discounting Dr. Hopfenbeck's opinions.

### 3. Dr. Meier

Dr. Meier examined Plaintiff in connection with his worker's compensation claim and wrote a letter to Plaintiff's attorney in April 2019 summarizing his findings. AR 1433-34. Dr. Meier concluded, in relevant part, that Plaintiff "would not be successful in returning to gainful employment or participating in vocational retraining. There are simply too many barriers to that." AR 1434.

The ALJ did not discuss Dr. Meier's letter, and Plaintiff contends that the ALJ erred in failing to include Dr. Meier's "work preclusive limitations findings in setting the RFC." Dkt. 16 at 15. Plaintiff's briefing notwithstanding, Dr. Meier's letter does not identify any particular work-preclusive limitations, nor does Dr. Meier opine as to what Plaintiff can still do despite his impairments. Thus, Dr. Meier's letter is not a medical opinion under the applicable regulation. *See* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion to be a statement from a medical source about what a claimant "can still do despite [his or her] impairment(s) and whether [he or

she has] one or more impairment-related limitations or restrictions" in certain functional categories). Plaintiff has cited no authority requiring the ALJ to discuss Dr. Meier's letter, and thus has not shown that the ALJ erred in failing to do so.

### C. The Commissioner's Unconstitutional Tenure Protection Does Not Independently Require a Reversal of the ALJ's Decision

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated the separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny Plaintiff benefits was made by individuals who had not properly been delegated authority to make such decisions.[3] For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection, but finds that the unconstitutional provision does not deprive the Commissioner of the authority to issue a decision on Plaintiff's claim and did not result in harm to Plaintiff that requires reversal of the ALJ's decision denying benefits.

*1. The Commissioner's Tenure Protection is Unconstitutional, but No Unconstitutional Protection Applies to ALJs or the Appeals Council*

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in § 902 violates the Constitution's separation of powers. In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's

---

[3] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here—and the one to which Commissioner Saul *was* subject—caused him harm.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of powers. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Plaintiff also contends that the ALJs and administrative appeals judges ("AAJs") on the Appeals Council are subject to an additional layer of removal protection under 5 U.S.C. § 7521(a) and 5 U.S.C. § 7543(a), respectively, which is unconstitutional under *Free Enterprise Fund v. Public Company Accounting Oversight Board*. In that case, the Supreme Court considered tenure protections applicable to members of the Public Company Accounting Oversight Board, who were appointed by the Securities and Exchange Commission ("SEC") and could be removed by SEC commissioners only for "good cause," and SEC commissioners in turn

could be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Free Enterprise Fund*, 561 U.S. 477, 486-87 (2010) (cleaned up).  The Court found that these dual layers of removal protection had created "a Board that is not accountable to the President, and a President who is not responsible for the Board." 561 U.S. at 495.  Because the Board had the power to execute and enforce laws, it had been given "executive power without the Executive's oversight," and such a structure was "incompatible with the Constitution's separation of powers." 561 U.S. at 498.

This case is distinguishable from *Free Enterprise Fund* because SSA ALJs and AAJs have not been given executive power, and instead perform "adjudicative rather than enforcement or policymaking functions[.]" *Free Enterprise Fund*, 561 U.S. at 507 n.10.  This distinction was acknowledged in a recent Ninth Circuit case, *Decker Coal Company v. Pehringer*, which contrasted Department of Labor ("DOL") ALJs adjudicating claims under the Black Lung Benefits Act and performing "purely adjudicative function[s]" with members of the Public Company Accounting Oversight Board "exercis[ing] policymaking and enforcement functions[.]" 8 F.4th 1123, 1133 (9th Cir. 2021).  The *Decker Coal* court also recognized that because the DOL chose, rather than was forced by Congress, to employ ALJs and AAJs to adjudicate benefits claims, it could not be said that Congress wrested executive power for itself, away from the President. 8 F.4th at 1134.

The Commissioner argues that *Decker Coal* is analogous here, both because SSA ALJs and AAJs perform adjudicative functions and because there is no statutory requirement that SSA employ ALJs or AAJs to adjudicate benefits claims. Dkt. 20 at 5-6.  The Court agrees.  Plaintiff attempts (Dkt. 22 at 4-5) to distinguish *Decker Coal* on the grounds that the decisions of DOL ALJs were reviewable by people directly subject to the President's authority, whereas SSA ALJs

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11

and AAJs are insulated by the unconstitutional protection afforded to the Commissioner. *See Decker Coal*, 8 F.4th at 1135. Even if *Decker Coal* can be factually distinguished on this basis, the President's ability to remove the DOL Secretary at will was only one of multiple reasons that the Ninth Circuit cited in finding no constitutional violation. *See id*. The Court finds that because SSA ALJs and AAJs perform adjudicative functions, and because SSA voluntarily chose to employ them to serve in that way, the tenure protections applicable to SSA ALJs and AAJs do not violate the separation of powers. Moreover, even if there was a constitutional violation, Plaintiff has nonetheless failed to show that it resulted in compensable harm, as explained *infra*.

> 2. The Constitutional Violation Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand. Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case. Plaintiff's argument fails.

First, the removal provision is severable. In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[4] Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

---

[4] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional, but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").

        3.     *Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection*

Third, Plaintiff has not shown — and cannot show — that the removal clause in § 902(a)(3) inflicted harm. In *Collins,* the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case the action challenged by Plaintiff is the Commissioner's decision denying benefits: because this decision has been fully reviewed by the Court and found to be free of harmful legal error and supported by substantial evidence, the Court's review of the

challenged decision indicates that Commissioner Saul's unconstitutional tenure did not result in harm to Plaintiff. *Cf. id.* at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). The ALJ's decision here was based upon an uncontested factual record, and the application of established law, including caselaw, which generally cannot be changed by the Commissioner.

Nor does Plaintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal indicate that Plaintiff was harmed. *See* Dkt. 22 at 7. Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and "reduced due process protections for benefits appeals hearings," this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one. *See* https://www.cnn.com/2021/07/09/politics/ social-security-commissioner-fired-by-biden/index.html (last visited Feb. 17, 2022). Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce the process available to a claimant, it is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due.

Plaintiff goes on to argue that the constitutional violation constitutes a "nexus to the harm" (Dkt. 22 at 6), citing *Lucia*, but this case does not support the proposition that a violation of separation of powers in itself constitutes compensable harm. The constitutional violation at issue in *Lucia* related to the Appointments Clause, and that violation deprived the ALJ of the authority to adjudicate claims. 138 S. Ct. at 2056. For reasons addressed *supra*, the Court finds

no Appointments Clause violation present here that would invalidate the benefits decisions from the outset.

This Court has reviewed the ALJ's decision and found no evidence of a due process violation. Because the Court has, for the reasons explained herein, found that the ALJ's decision is free from harmful legal error and is supported by substantial evidence, Plaintiff cannot show any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits. *See Decker Coal*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.")). Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 25th day of February, 2022.

S. KATE VAUGHAN
United States Magistrate Judge